No. 116,937

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENT D. LINDEMUTH,
*Appellant*.

SYLLABUS BY THE COURT

1.

The law allows a defendant to present alternate theories of defense and receive jury instructions on both theories.

2.

A requested jury instruction should be given when there is sufficient evidence that a rational fact-finder could use to find for the defendant on that theory.

3.

Kansas law now explicitly recognizes two types of force—use of force and use of deadly force.

4.

Use of force means any or all of the following directed at or upon another person or thing:  words or actions that reasonably convey the threat of force, including threats to cause death or great bodily harm to a person; the presentation or display of the means of

1

force; or the application of physical force, including by a weapon or through the actions of another. K.S.A. 2017 Supp. 21-5221(a)(1).

5.

Use of deadly force means the application of any physical force described above which is likely to cause death or great bodily harm to a person. Any threat to cause death or great bodily harm, including, but not limited to, by the display or production of a weapon, shall not constitute use of deadly force, so long as the actor's purpose is limited to creating an apprehension that the actor will, if necessary, use deadly force in defense of such actor or another or to affect a lawful arrest. K.S.A. 2017 Supp. 21-5221(a)(2).

6.

Two types of force can be used by persons to legally defend their workplace: A person is justified in the use of force against another when and to the extent that it appears to such person and such person reasonably believes that such use of force is necessary to prevent or terminate such other's unlawful entry into or attack upon such person's place of work; a person is justified in the use of deadly force to prevent or terminate unlawful entry into or attack upon any place of work if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or another; and nothing in this law shall require a person to retreat if such person is using force to protect such person's place of work. K.S.A. 2017 Supp. 21-5223.

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed March 30, 2018. Reversed and remanded.

*Christopher M. Joseph* and *Carrie E. Parker*, of Joseph, Hollander & Craft LLC, of Topeka, for appellant.

2

*Rachel L. Pickering*, assistant district attorney, *Michael F. Kagay*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., HILL, J., and WALKER, S.J.

HILL, J.:  The law allows a defendant to present alternative theories of defense and receive jury instructions on those theories. Kent D. Lindemuth requested a defense of the workplace instruction in his trial for making a criminal threat. The trial court denied the request, ruling the facts did not support giving the instruction. Because now, under limited circumstances, the Legislature has included making threats of deadly force as a part of the legitimate use of force, we hold that the trial court erred when it refused to give the instruction. We reverse and remand for further proceedings.

After giving a brief review of the facts of the case, we delve into the statutes that deal with the legitimate use of force. We show how the Legislature now distinguishes "use of force" and "use of deadly force" and how words and actions, depending on the seriousness of the circumstances, are considered. Then we look at the law of defense of the workplace and address the question here about why the jury needed to be instructed on that law. Finally, we examine the court's ruling and Lindemuth's proposed instruction and conclude with our holding of error for failing to instruct.

*Taking a trailer leads to angry words.*

The facts of this case are straightforward. A truck driver driving a tractor-trailer rig for Wellco Company based in Dover, Oklahoma, parked his trailer in Topeka in a parking lot owned by Lindemuth. He detached his tractor and drove off to obtain supplies for his trip, leaving the trailer and cargo in the lot. Before the driver came back, Lindemuth parked a vehicle in front of the trailer, effectively preventing it from being removed from the lot. When the driver eventually returned, Lindemuth confronted him.

3

While tapping a holstered gun on his hip, Lindemuth told the driver to leave. But the driver did not leave and instead called his employer in Oklahoma and then the police.

Lindemuth then had several telephone conversations with Mike Matthews, the owner of Wellco who was, at first, in Oklahoma. Matthews and Lindemuth offer different versions of what was said during the calls.

According to Matthews, Lindemuth told him that the trailer had damaged his property and he would return it when he was paid for the damage. After that conversation, Matthews learned that the trailer had been removed from the lot and was not even in Topeka anymore. Matthews became angry and the two spoke again. The tone of their conversation deteriorated. Matthews told Lindemuth that he was going to fly to Topeka to get his trailer back.

Again, according to Matthews, after hearing this, Lindemuth told him that if Matthews came to Topeka, Lindemuth "was going to put a bullet in [Matthews and was] going to riddle [Matthews] up with bullets if [Matthews] came [to Topeka]." Undeterred, Matthews said he was coming to Topeka to talk about retrieving the trailer and Lindemuth again said that if Matthews came, then Lindemuth would kill him.

After hearing this, Matthews grew angrier. Matthews threatened Lindemuth that he was going to "whip his ass." Matthews testified that he wanted to take "Lindemuth's gun and shove it up his ass." Matthews testified that he, in fact, still held that sentiment on the day of trial. Matthews also stated that he had intended to come to Topeka to recover the trailer even before Lindemuth made any threat.

Lindemuth offered a different version of the events. He stated that he had found an abandoned trailer on his property and towed the trailer away. Lindemuth followed the trailer after it was towed to make sure that it was secure. Lindemuth received a call from

4

Matthews, and Lindemuth claimed that Matthews was very angry about the trailer being taken. Lindemuth was in his office when he received this call. Lindemuth told Matthews that before he would return the trailer Matthews would need to pay for "some expense" in an amount that Lindemuth had not yet determined.

According to Lindemuth, he received a second call from Matthews. Lindemuth was in his office in Topeka. He portrayed this call as all about firearms and Matthews wanting to shove a gun up Lindemuth's ass. Lindemuth denied that he talked about his own gun or threatened Matthews.

After these calls, Matthews flew to Topeka. Upon his arrival, he called Lindemuth and told him that he had arrived. According to Matthews, Lindemuth again threatened to shoot him. Luckily for both men, Matthews never actually met Lindemuth because after this telephone conversation, Matthews received a call from a police detective who told him that the police had recovered his trailer. It seems that after talking with his lawyer, Lindemuth had decided to return the trailer to Matthews. Criminal charges followed.

The State eventually charged Lindemuth with two counts of making a criminal threat: one for the threat made during the telephone call when Matthews was in Oklahoma, and one for the threat made during the telephone call when Matthews was in Topeka. A jury heard the evidence.

After the presentation of evidence, Lindemuth asked the court to give the jury an instruction on the defense of the workplace. Even though Lindemuth maintained that he had made no threats, he argued the instruction was appropriate in the event that the jury determined he had made threats. The trial court denied Lindemuth's request for such a jury instruction, simply finding that the facts did not support the requested instruction. We emphasize that Matthews was in Oklahoma for the first call and never physically approached Lindemuth during the call made in Topeka.

5

The jury found Lindemuth guilty of one count of criminal threat for the threat made while Matthews was in Oklahoma, but it acquitted him of the other charge. The court sentenced Lindemuth to a suspended term of confinement and probation. He appeals to this court, claiming reversible error because the court refused to give the jury the instruction on defense of the workplace.

*The defendant was entitled to a defense of the workplace instruction.*

Here, there is no issue concerning our jurisdiction over this question of law since Lindemuth preserved the issue for review by requesting such an instruction. See *State v. Louis*, 305 Kan. 453, 457, 384 P.3d 1 (2016).

But first, we must address the apparent inconsistency between a proposed instruction and the defense offered at trial. Lindemuth maintained at trial that he did not make any threats. His requested instruction for a lawful use of force in defense of the workplace simply does not support this defense. These positions seem inconsistent but Lindemuth is correct—the law allows a defendant to present alternate theories of defense and receive jury instructions on both theories. See *State v. Williams*, 303 Kan. 585, 599, 363 P.3d 1101 (2016). The fact that Lindemuth denied making any threat does not prevent him from raising this defense and requesting such an instruction.

It is well established that a defendant is entitled to jury instructions on the law applicable to his or her theory of defense. A requested instruction should be given when there is sufficient evidence that a rational fact-finder could use to find for the defendant on that theory. *State v. Hilt*, 299 Kan. 176, 184, 322 P.3d 367 (2014). This is true even though Lindemuth had two different theories of defense. We turn now to see if the instruction he wanted was factually and legally appropriate.

6

Factually, it is undisputed that the phone calls were made while Lindemuth was in his office in Topeka. He was at his workplace when the exchanges took place. Clearly then, there is a basis in fact to give a defense of the workplace instruction.

The more difficult question to answer is whether the instruction was legally appropriate. At first glance, the trial judge's denial of the requested instruction makes some sense. After all, Matthews was over 100 miles away in Oklahoma when Lindemuth made the first threat and then merely in the same city when Lindemuth made the second threat. We suspect that this issue would not have arisen if Lindemuth had asked for such an instruction and the facts were that Matthews was pounding on Lindemuth's office door, demanding admission. A reasonable court would give such an instruction. In such a scenario, there is an immediacy to the perceived threat with Matthews just outside the office door, in contrast with two men arguing on the telephone. Because there was no immediate threat to Lindemuth from Matthews, the State argued successfully to the trial court that Lindemuth was not entitled to the jury instruction. The State maintains that same position before us. But a careful reading of the applicable statutes leads us to conclude that Lindemuth was entitled to the instruction and, thus, the trial court erred when it refused to give one. Because the question is not about the immediacy of any threat from Matthews, but it is more about when Lindemuth could legitimately threaten deadly force.

To answer this question we must turn to the statutes defining use of force and use of deadly force and consider them along with the statute permitting the defense of the workplace. Kansas law now explicitly recognizes two types of force—use of "force" and use of "deadly force." In response to our Supreme Court's holding in *State v. Hendrix*, 289 Kan. 859, 218 P.3d 40 (2009), the Legislature amended the use of force statutes to include the threat of force. Hendrix was convicted of criminal threat and aggravated assault based upon an incident where he threatened his sister with a knife while he was visiting his mother. The court held that under the plain language of the use of force

7

statutes, a jury instruction was not warranted unless the defendant had actually used force. 289 Kan. at 862. In other words, threatening the use of force was not protected under the statute. This holding prompted change.

We look first at the changed definitions. "Use of force" means any or all of the following directed at or upon another person or thing:

- Words or actions that reasonably convey the threat of force, *including threats to cause death or great bodily harm to a person*;
- the presentation or display of the means of force; or
- the application of physical force, including by a weapon or through the actions of another. K.S.A. 2017 Supp. 21-5221(a)(1).

Thus, words and threats and symbolic speech through actions and gestures are now a part of the use of force. The actual application of force is included as well. Simply put, words and actions are now included in the definition of use of force. But there is also a more serious level of force contemplated by the changed law.

"Use of deadly force" means:

- The application of any physical force described in paragraph (1) above which is likely to cause death or great bodily harm to a person.
- Any threat to cause death or great bodily harm, including, but not limited to, by the display or production of a weapon, *shall not constitute use of deadly force, so long as the actor's purpose is limited to creating an apprehension that the actor will, if necessary, use deadly force in defense of such actor* or another or to affect a lawful arrest. K.S.A. 2017 Supp. 21-5221(a)(2).

The *application* of force is clearly the main component of use of deadly force. Threats are excluded from the definition. The way this statute is written means that the *threat* of

deadly force becomes a warning of possible lethal consequences and is permitted in limited circumstances under the law.

Then, K.S.A. 2017 Supp. 21-5223 also speaks to the two types of force and sets out when a person can legally defend his or her workplace:

- A person is justified in the *use of force* against another when and to the extent that it appears to such person and such person reasonably believes that such use of force is necessary to prevent or terminate such other's unlawful entry into or attack upon such person's place of work.
- A person is justified in the *use of deadly force* to prevent or terminate unlawful entry into or attack upon any place of work if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or another.
- Nothing in this statute shall require a person to retreat if such person is using force to protect such person's place of work.

Obviously, this means that the Legislature has reserved the more serious use of deadly force for instances of imminent danger.

When we apply this statutory matrix to the facts of this case, the answer to our question becomes manifest. It is clear that Lindemuth threatened deadly force but never applied deadly force. Lindemuth talked—he never shot. Here, according to the statutes, making a threat of deadly force is not considered *the use* of deadly force so long as Lindemuth's purpose was limited to creating an apprehension in Matthews that he, Lindemuth, would, if necessary, use deadly force to prevent Matthews' unlawful entry or attack upon Lindemuth's workplace. In other words, stay away from his Topeka workplace or there will be lethal consequences.

9

This means that for a jury to properly determine if Lindemuth's actions complied with the law, then it needed to be properly instructed on the law of defense of the workplace as Lindemuth requested. We illustrate our meaning with the following example.

After removing the unnecessary parenthetical options in the pattern instruction and considering the gender of the defendant, PIK Crim. 4th 52.210 (2016 Supp.) would read:

> "Defendant claims his conduct was permitted as a lawful defense of his place of work.
> "Defendant is permitted to threaten by words or actions to use physical force against another person, including a threat to cause death or great bodily harm to the extent that it appears to him and he reasonably believes that such threat is necessary to prevent the other person from unlawfully entering into his place of work. Reasonable belief requires both a belief by defendant and the existence of facts that would persuade a reasonable person to that belief."

This instruction clearly tracks the statutes we have discussed in K.S.A. 2017 Supp. 21-5221(a)(1), (a)(2), and K.S.A. 2017 Supp. 21-5223.

Lindemuth modified the pattern instruction and suggested the following:

> "The defendant is permitted as a lawful defense to threaten by words or actions to use physical force against another person, including a threat to cause death or great bodily harm, to the extent that it appears to him and he reasonably believes that such threat is necessary to prevent the other person from unlawfully entering into his place of work. Reasonable belief requires both a belief by defendant and the existence of facts that would persuade a reasonable person to that belief."

10

Obviously, after reading both, the PIK instruction is preferable because it immediately sets out for the jury the claims of the defendant, where Lindemuth's modification fails to do so.

But what Lindemuth offered is not pertinent to our discussion. The law requires the judge to instruct the jury and not just give instructions proposed by both sides. See K.S.A. 2017 Supp. 60-251. The judge refused to instruct the jury on this topic and did not refuse to give Lindemuth's proposed instruction because it failed to follow the pattern instruction. The error comes in not giving any instruction and thus removing the defense of the workplace from the jury's consideration entirely.

Instead, the district court ruled:

"Certainly, Mr. Lindemuth clearly said he made no such threat. And what's being proposed is unlawful entering into his place of work. There were no facts . . . no facts to support that or the fact that the defendant did, in fact, respond to threats of Mr. Matthews by making a threat, that—there was no evidence to that effect. So I'm not going to allow those two instructions."

The district court's analysis fails for three reasons. First, the jury heard both Lindemuth's and Matthews' testimony and could decide, based on that testimony, whether it was reasonable under these circumstances for Lindemuth to threaten Matthews in order to prevent an unlawful entry into Lindemuth's workplace. It is important to note that since Lindemuth requested a defense of the workplace instruction, we must view the evidence in the light most favorable to the defendant. See *State v. Dupree*, 304 Kan. 377, 397, 373 P.3d 811 (2016). Thus, even though Lindemuth denied making any threats, had the court instructed the jury a rational fact-finder could have found that he did make threats (as it did when it found him guilty) and it was reasonable to do so under these circumstances based on the threats made by Matthews to come to Topeka. We recall Lindemuth's testimony that Matthews said he wanted to shove a gun up Lindemuth's ass. This is

11

evidence the jury could consider and weigh. Obviously, with no such instruction, the jury was not aware that the law permits such threats under some circumstances. Thus, the jury could not consider the claim here because of the court's refusal to instruct.

Next, there is no restriction in the statute that says a person can only use threats of force, including a threat to cause death or great bodily harm, in response to a threat from someone else. That was a requirement imposed by the district court here and not required by the law. The legal restriction on making these types of threats is solely one of reasonableness.

Finally, there is no requirement of an imminent unlawful entering of the workplace to be legally allowed to make a threat of this type. That limitation of imminence is applied only in cases where there is an application of deadly force—the second type of force that we have discussed. Again, the district court imposed such a requirement here when the law does not.

We must emphasize that the defense of the workplace statute limits the use of deadly force only to prevent "imminent death or great bodily harm." There is no such limitation for the use of force which includes making a threat of the use of deadly force. Therefore, the lack of an immediate threat to Lindemuth by Matthews is irrelevant here because that is limited to cases where deadly force is used. This is not such a case. Matthews did not need to be pounding on Lindemuth's office door in order for Lindemuth to be legally entitled to a defense of the workplace instruction. But the reasonableness of making such a threat was a question for a properly instructed jury.

Because the trial court failed to instruct the jury, we must reverse.

Reversed and remanded for further proceedings.

12