IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,937

STATE OF KANSAS,
*Appellee*,

v.

KENT D. LINDEMUTH,
*Appellant.*

SYLLABUS BY THE COURT

1.

Generally, when an appellate court decision changes the law, that change acts prospectively and applies to all cases pending on direct review or not yet final on the date of the appellate court decision.

2.

The provision in K.S.A. 2019 Supp. 21-5415(a)(1), allowing for a conviction if a threat of violence is made in reckless disregard for causing fear, is unconstitutionally overbroad because it punishes conduct that is constitutionally protected under some circumstances.

3.

A constitutional error is harmless if the State can demonstrate beyond a reasonable doubt the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., when there is no reasonable possibility the error contributed to the verdict.

1

Review of the judgment of the Court of Appeals in 55 Kan. App. 2d 419, 417 P.3d 262 (2018). Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed August 28, 2020. Judgment of the Court of Appeals reversing the district court and remanding the case to the district court is affirmed. Judgment of the district court is reversed, and the case is remanded with directions.

*Christopher M. Joseph*, of Joseph, Hollander & Craft LLC, of Topeka, argued the cause, and *Carrie E. Parker*, of the same firm, was with him on the briefs for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Natalie Chalmers*, assistant solicitor general, *Rachel L. Pickering*, assistant district attorney, *Michael F. Kagay*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

PER CURIAM:  A jury convicted Kent D. Lindemuth of one count of criminal threat under K.S.A. 2019 Supp. 21-5415(a)(1) ("A criminal threat is any threat to [c]ommit violence communicated with intent to place another in fear . . ., or in reckless disregard of the risk of causing such fear . . ."). A Court of Appeals panel reversed the conviction, holding the trial court erred by rejecting defense counsel's proposed jury instruction on workplace defense. *State v. Lindemuth*, 55 Kan. App. 2d 419, 420, 417 P.3d 262 (2018). The State sought review of that decision; but while review was pending, this court held in another case the provision in K.S.A. 2019 Supp. 21-5415(a)(1) allowing conviction if a threat of violence was made in reckless disregard for causing fear was unconstitutionally overbroad. See *State v. Johnson*, 310 Kan. 835, 450 P.3d 790 (2019). We must now consider whether Lindemuth's conviction can stand after this change in our caselaw regardless of the outcome on the State's issue for review. We hold it cannot.

Based on *Johnson*, we reverse Lindemuth's conviction and affirm the panel's judgment as right for the wrong reason. See *State v. Williams*, 311 Kan. 88, 91, 456 P.3d 540 (2020) (affirming Court of Appeals as right for the wrong reason). We remand the

2

case to the district court for further proceedings. We do not address the workplace defense instruction issue because its factual basis may change on retrial.

## FACTUAL AND PROCEDURAL BACKGROUND

Roberto Rendon, a driver for an Oklahoma trucking company, stopped in Topeka on his way to Nebraska. He parked his trailer in a parking lot at a shopping center owned by Lindemuth. Rendon detached his cab and drove off to get supplies for his trip, leaving the trailer. When he returned 30-45 minutes later, the trailer was gone. He soon learned it was towed away at Lindemuth's direction.

Rendon called Michael Matthews, his employer, who was in Oklahoma, to tell him what happened to the trailer. He also contacted the Topeka Police Department. While doing this, Rendon noticed Lindemuth walking toward him. According to Rendon, Lindemuth was "very belligerent" and openly carried a gun. Rendon confronted him about the trailer. Lindemuth simply told him to get off his property.

For the next six hours, Lindemuth refused to tell anyone where the trailer was. Several police officers eventually came to his office, but Lindemuth did not answer the door. Instead, he called his lawyer who arrived and talked to the officers. Lindemuth turned over the trailer.

During the standoff before the trailer was released, Matthews called Lindemuth several times. Their accounts about those calls conflict. Matthews said Lindemuth wanted Matthews to pay $20,000 or $30,000 to retrieve the trailer. He said Lindemuth threatened to kill him on every phone call except the first one. According to Matthews,

3

"[W]hen I got him on the phone, I think I acknowledged that he carried a gun. Like, I know that you're toting a pistol, but *I'm coming up there*. And, you know, you're either going to give me that trailer back and we're getting into it—and *that's when he said* he was going to—'I'll just shoot ya. You come up here, I'll kill you. I want my money.'" (Emphases added.)

Matthews did not remember the chronology of the threats, nor was he certain whether they began before he told Lindemuth he was coming to Topeka.

Once he arrived in Topeka, Matthews called Lindemuth, telling him "'I'm here'" and asking "'[w]here are you at?'" Lindemuth kept threatening to kill him. The two men did not meet in person. Lindemuth denied making any threats to Matthews. He also denied asking for money but admitted he wanted to keep the trailer until he determined if he was owed money for damage to the parking lot.

The State charged Lindemuth with two counts of criminal threat under K.S.A. 2019 Supp. 21-5415(a)(1). The two counts were distinguished by the location where Matthews was when Lindemuth allegedly made the threats: one count of the crime prior to Matthews leaving Oklahoma and one count after he left Oklahoma. A jury found Lindemuth guilty of the first count, but acquitted him of the other. He appealed to the Court of Appeals.

The sole issue before the panel was whether the trial court committed reversible error by refusing to give defense counsel's proposed jury instruction on a workplace-defense theory under K.S.A. 2019 Supp. 21-5223(a) ("A person is justified in the use of force against another when and to the extent that it appears to such person and such person reasonably believes that such use of force is necessary to prevent . . . such other's unlawful entry into . . . such person's . . . place of work . . . ."). The panel reversed the

4

conviction, holding the trial court erred. *Lindemuth*, 55 Kan. App. 2d at 420. The panel held the requested instruction was factually appropriate based on the trial evidence. 55 Kan. App. 2d at 423.

This court obtained jurisdiction over the dispute when we granted the State's petition for review of the panel's decision. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

Just a few days before oral arguments, this court released *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019), and *Johnson*. Both decisions declared "[t]he provision in K.S.A. 2018 Supp. 21-5415(a)(1), allowing for a conviction if a threat of violence is made in reckless disregard for causing fear, is unconstitutionally overbroad because it punishes conduct that is constitutionally protected under some circumstances." *Johnson*, 310 Kan. 835, Syl. ¶ 3; see *Boettger*, 310 Kan. 800, Syl. ¶ 3. On the same day, Lindemuth filed a Supreme Court Rule 6.09 letter, arguing his appeal was affected and requesting this court reverse his conviction as it had for the defendant in *Johnson*. See Supreme Court Rule 6.09 (2020 Kan. S. Ct. R. 39).

At oral argument, the parties discussed the potential consequences of these new decisions. Afterwards, the court ordered supplemental briefing. Meanwhile, the State filed a petition for certiorari with the United States Supreme Court in *Boettger* and *Johnson*. The Court denied the State's petition. 140 S. Ct. 1956 (2020).

DISCUSSION

In *Boettger* and *Johnson*, our court noted there were First Amendment implications to criminalizing threatening speech based on decisions like *Virginia v.*

5

*Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003). *Boettger*, 310 Kan. at 805 (stating "[c]lasses of speech the government may punish include obscenity, defamation, fighting words, incitement to imminent breach of the peace, and 'true threats'") (citing *Black*). We held K.S.A. 2019 Supp. 21-5415(a)(1) potentially criminalized speech protected under the First Amendment because it permitted conviction for "reckless" criminal threats rather than limiting the crime to intentional threats. See K.S.A. 2019 Supp. 21-5202(h) and (j) (defining "'intentionally'" and "'recklessly'" in Kansas criminal statutes). In *Boettger*, the defendant's criminal threat conviction was based solely on the reckless disregard provision, so the court reversed it as unconstitutional. *Boettger*, 310 Kan. at 823.

In *Johnson*, the State charged the defendant with intentionally or recklessly making a criminal threat. The district court instructed the jury on both mental states, and the jury received a verdict form asking for a determination of whether the defendant committed the crime of a criminal threat without requiring it to indicate separately whether it found the defendant acted either intentionally or recklessly. Faced with an alternative means issue because both mental states were alleged, the *Johnson* court employed the constitutional harmless error analysis—"A constitutional error is harmless if the State can show 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict'"—to determine whether the conviction was to be reversed. 310 Kan. at 843.

The *Johnson* court reversed and remanded the conviction by holding the State failed to meet the "no reasonable possibility" standard. In reaching that conclusion, it noted:  (1) "[t]he district court instructed the jury on both forms of criminal threat and accurately recited the [statutory] definitions of 'intentionally' and 'recklessly'"; (2) "neither the jury instructions nor the State's arguments steered the jury toward convicting

6

Johnson based solely on one mental state or the other"; (3) the judge did not "instruct the jury it had to agree unanimously on whether Johnson acted intentionally or recklessly"; and (4) "the verdict form did not require the jury to make a specific finding." 310 Kan. at 843. In addition, the court noted based on the evidence that the jury "could have believed the [defendant's] statements were made with a reckless disregard for whether they caused fear." 310 Kan. at 844.

Generally, when an appellate court decision changes the law, that change acts prospectively and applies to all cases pending on direct review or not yet final on the date of the appellate court decision. *State v. Butler*, 307 Kan. 831, 863, 416 P.3d 116 (2018); *State v. Mitchell*, 297 Kan. 118, 124-25, 298 P.3d 349 (2013). Based on this well-established doctrine, we apply *Johnson*'s framework.

The circumstances contributing to the outcome in *Johnson* also exist in Lindemuth's case. First, the trial court instructed the jury on both mental states and provided their statutory definitions. The court told the jury:

> "To establish this [criminal threat] charge, each of the following claims must be proved:

> "1. The defendant threatened to commit violence and communicated the threat *with the intent to place another in fear, to wit: Michael Matthews or with reckless disregard of the risk of causing fear in another, to wit: Michael Matthews* (prior to Matthews leaving Oklahoma).

> "2. This act occurred on or about the 17th day of October, 2014, in Shawnee County, Kansas.

> . . . .

7

"The State must prove that the defendant committed the crime *intentionally or recklessly*.

"A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State . . . .

"A defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that certain circumstances exist or a result of the defendant's actions will follow.

"This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation." (Emphases added.)

Second, neither the jury instruction nor the State's arguments directed the jury toward convicting Lindemuth based solely on one mental state or the other. The prosecutor and the court mentioned the requisite mental states several times but simply in a neutral way. For instance, during voir dire, the prosecutor said "[t]he defendant's charge in this case is that he threatened to kill with the intent or in reckless disregard. Meaning he didn't care of the outcome, which is scaring somebody." After the jury was selected but before it was sworn in, the trial court gave the selected jurors "a little more information now that [they were] going to be the jurors in this case." And it said, "The State must prove that the defendant committed the act intentionally or recklessly"; then it provided the definitions of "intentionally" and "recklessly." During closing argument, the prosecutor commented,

"In Instruction Number 6, you'll see that he's charged with criminal threat. And what are the elements that I have to prove to support a verdict of guilty? And you'll see it's, the defendant threatened to commit violence, he communicated the threat *with the intent to*

8

*place another in fear, Michael Matthews, or in reckless disregard for that*." (Emphasis added.)

Third, while telling the jury that its "agreement upon a verdict must be unanimous," the trial court did not instruct the jury it had to agree unanimously on whether Lindemuth acted either intentionally or recklessly.

Fourth, the jury verdict form stated, "We, the jury, find the defendant guilty of the crime of criminal threat (prior to Matthews leaving Oklahoma)." The jury did not indicate it had unanimously concluded Lindemuth made a criminal threat either intentionally or recklessly.

Finally, Lindemuth denied making any threatening statements to Matthews. So his alleged threat to commit violence and communication of it with the *intent* to place Matthews in fear—versus his *reckless* disregard of the risk of causing fear in another— obviously must come from other evidence. We start the analysis of this evidentiary factor with those different levels of conduct in mind.

We agree the jury may have believed that in Matthews' version of the conversations, Lindemuth simply spoke in the heat of argument and the result of unthinking rage—more reckless, impulsive bluster than an intentional threat. For example, Matthews testified he volunteered to Lindemuth that "I know that you're toting a pistol, but I'm coming up there [to Topeka]. And . . . you're either going to give me that trailer back [or] we're getting into it." And per Matthews, Lindemuth immediately responded to this ultimatum with, "'I'll just shoot ya. You come up here, I'll kill you.'"

Moreover, in reasonably believing Lindemuth did not make an intentional threat to commit violence, the jury also may have considered Matthews' reactions to Lindemuth's

9

statements. Specifically, a jury may have found support for his "recklessness" by acknowledging that despite Lindemuth's purported threats to shoot and kill Matthews if he came to Topeka, Matthews nevertheless traveled there from Oklahoma to confront Lindemuth. Matthews' conduct would appear to be at least inconsistent with a person's usual reaction to true threats, i.e., those communicated with the *intent* to place another in fear of violence. For as we said in *Boettger*, "'[A] prohibition on true threats "protects individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur."'" 310 Kan. at 807 (quoting *Black*, 538 U.S. at 360); 310 Kan. at 821 ("'[I]t is not enough that a reasonable person might have understood the words as a threat—a jury must find that the speaker actually intended to convey a threat.'"). And once Matthews arrived in Topeka and proclaimed his presence to Lindemuth with the challenge "'I'm here . . . [w]here are you at?'" the trash talking Lindemuth apparently made no effort to meet Matthews. In sum, Lindemuth apparently had his impulsive bluff called.

In considering the impact of this evidence, a reasonable person could believe that Lindemuth recklessly disregarded causing fear in Matthews with his rash, immediate response to Matthews' ultimatum which included the option of "getting into it" with an armed Lindemuth—instead of making a threat intended to cause such fear. Because as we said in *Boettger,* 310 Kan. 800, Syl. ¶ 2, "True threats encompass those statements where the speaker *means* to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." (Emphasis added.)

So like *Johnson*, the trial record provides no basis for this court to discern whether the jury concluded the State had proved beyond a reasonable doubt that Lindemuth committed criminal threat intentionally. Similarly, we cannot conclude the State met its harmless error burden to show there is no reasonable possibility the error contributed to the verdict. See *Johnson*, 310 Kan. at 843-44.

10

Lindemuth's conviction must be reversed and the case remanded to the district court for further proceedings. As explained, the panel's result was correct, even though its basis differs from the change of law occasioned by *Johnson*. See *Williams*, 311 Kan. at 91 (affirming judgment as right for the wrong reason).

That leaves us to consider whether we should address the State's specific challenge to the panel's decision on the factual appropriateness of the workplace defense instruction and preservation of that issue for appeal purposes, which we do in appropriate circumstances on issues that will arise during a new trial on remand. See, e.g., *State v. Barrett*, 309 Kan. 1029, 442 P.3d 492 (2019) (reversing conviction and remanding for a new trial because the district court committed reversible error when it failed to give imperfect self-defense voluntary manslaughter instruction, but addressing other issues such as evidentiary and speedy trial matters); *State v. Elnicki*, 279 Kan. 47, 105 P.3d 1222 (2005) (reversing convictions based on prosecutorial error committed during closing argument and remanding for a new trial, but considering other matters such as evidence's admissibility and evidence's sufficiency). But in this case, that consideration requires speculation to decide whether the workplace-defense theory would be factually appropriate in a second trial because factual appropriateness will depend on the evidence presented in a new trial. The same is true for the State's preservation claim.

We cannot do this. And the question whether the instruction was factually appropriate based on the evidence at the first trial and any error's effect are moot issues. S*tate v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012) ("Generally, Kansas appellate courts do not decide moot questions or render advisory opinions."). As a result, we decline to address this workplace defense challenge.

Judgment of the Court of Appeals reversing the district court is affirmed as explained. Judgment of the district court is reversed, and the case is remanded with directions.

JARED B. JOHNSON, District Judge, assigned.[1]

\*\*\*

ROSEN, J., dissenting:  I would not reverse Lindemuth's conviction and remand to the district court under the majority's reasoning. I would, instead, find the constitutional error harmless. I write separately from Justice Biles because I did not join Justice Stegall's dissenting opinion in *State v. Johnson*, 310 Kan. 835, 844-47, 450 P.3d 790 (2019) (Stegall, J., dissenting). In *Johnson*, while there was strong evidence supporting intentional conduct, I agreed with the majority that there was also evidence of recklessness. In Lindemuth's case, I see no evidence of recklessness.

The jury convicted Lindemuth of one count of criminal threat based on his interactions with Matthews. The State presented evidence that during a phone call between Matthews and Lindemuth, Lindemuth told Matthews he was going to shoot and kill him. Under the circumstances of this case, I cannot see how any person could consider this simply reckless; it showcased a clear intent to cause fear. In *Johnson*, although the State offered evidence that the defendant had threatened to kill his mother,

---

[1]**REPORTER'S NOTE:**  District Judge Johnson was appointed to hear case No. 116,937 under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.

12

two witnesses testified that the family regularly spoke that way to one another and no one took it literally. 310 Kan. at 837. Under those facts, a reckless criminal threat was factually plausible. There was no similar testimony here; Lindemuth simply denied making any threatening statements. Consequently, I see no evidence of recklessness and would conclude the error was harmless.

***

BILES, J., dissenting: I would not reverse Lindemuth's conviction and remand to the district court for the reasons explained by the court. I would find the constitutional error harmless under the rationale explained in Justice Stegall's dissenting opinion in *Johnson*, which I joined. See *State v. Johnson*, 310 Kan. 835, 844-47, 450 P.3d 790 (2019) (Stegall, J., dissenting). And based on that, I would keep the case to reach the issues on the instructional error claim.

STEGALL, J., joins the foregoing dissent.