NOT DESIGNATED FOR PUBLICATION

No. 123,767

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEVANTE OLIVER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed February 4, 2022. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before CLINE, P.J., GREEN, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: In this appeal Jevante Oliver challenges the inclusion of his criminal threat conviction in case No. 13CR2196 in the calculation of his criminal history score when sentencing him in case No. 18CR2402. He contends that K.S.A. 2020 Supp. 21-6810(d)(9)'s plain language and our Supreme Court's holding in *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019), *cert. denied* 140 S. Ct. 1956 (2020), barred the district court from using his prior criminal threat conviction to calculate his criminal history score. Thus, according to Oliver, the sentence imposed by the district court was illegal. We are unpersuaded by this argument and affirm.

1

In 18CR2402, the State charged Oliver with two drug crimes. Oliver entered into a plea agreement whereby the State agreed to reduce one of the drug charges. Oliver agreed to plead guilty to this reduced charge as well as to the other charge of possession of paraphernalia with intent to distribute. The State agreed to request the low number in the grid box for each crime but was free to request that the court impose consecutive prison sentences. Oliver was free to request probation.

At the plea hearing, Oliver entered the agreed guilty pleas. At sentencing in March 2019, the district court granted Oliver's request for probation for both crimes. The court sentenced him to two consecutive 12-month terms of probation with underlying consecutive prison sentences of 30 months and 11 months followed by 12 months' postrelease supervision.

Several months later, the State moved to revoke Oliver's probation based on new crimes Oliver was alleged to have committed in violation of the terms of his probation. (Those new charges were the subject of case No. 19CR1914. That case is the subject of another appeal we are also considering today.) At the hearing on the State's motion, Oliver admitted the probation violation.

Central to the current appeal is our Supreme Court's holding in *Boettger*. In that case our Supreme Court held that the portion of our criminal threat statute, K.S.A. 2018 Supp. 21-5415, which criminalized the making of a threat of violence in reckless disregard of the risk of causing fear, is "unconstitutionally overbroad because it punishes conduct that may be constitutionally protected under some circumstances." 310 Kan. 800, Syl. ¶ 3. (The remaining provision of the statute, K.S.A. 2018 Supp. 21-5415[a][1], which criminalized intentional criminal threats, remains intact.) K.S.A. 2020 Supp. 21-6810(d)(9) prohibits a district court from using a defendant's prior conviction for

purposes of calculating a criminal history score if an appellate court has determined that the law the defendant violated is unconstitutional.

Based on the holding in *Boettger*, Oliver moved the court to disregard his criminal threat conviction in 13CR2196 in calculating his criminal history score. He contended that his criminal conduct in that case was reckless rather than intentional. He argued that including this prior conviction in his criminal history when he was originally sentenced in this case improperly changed his criminal history score from E to C, resulting in an illegal sentence.

The State conceded that it had charged Oliver with both intentional criminal threat and reckless criminal threat in the earlier case. But it asserted that the colloquy between Oliver and the court regarding the factual basis for Oliver's conviction established that Oliver's criminal threat was intentional rather than reckless, and that only the portion of the statute dealing with reckless conduct was found in *Boettger* to be unconstitutional. The State relied on the following exchange that took place at the time of Oliver's plea in the criminal threat case.

> "THE COURT: Now, in relation to that amended charge of criminal threat, Mr. Oliver, how do you plead to that?
> "THE DEFENDANT: Guilty.
> "THE COURT: Are you pleading guilty to that amended charge because you are guilty?
> "THE DEFENDANT: Yes, sir.
> "THE COURT: Okay. What I would like for you to do, Mr. Oliver, is tell me in your own words what you did on or about July 17th of last year here in Sedgwick County, Kansas, that makes you think you are guilty of criminal threat. First of all, did this involve a person by the name of Bishop L. Howard?
> "THE DEFENDANT: Yes, sir.
> . . . .

3

"THE COURT: . . . Did you do any communications with him or make any threats to him—

"THE DEFENDANT: Yes, sir.

"THE COURT: — to commit violence? Okay. What exactly was that?

"THE DEFENDANT: I threatened to hurt him. We had got into an altercation. I was—

"THE COURT: Okay. Did you threaten to kill him or hurt him or shoot him or anything like that?

"THE DEFENDANT: No, sir.

"THE COURT: Okay.

"THE DEFENDANT: Just threatened to hit him.

"THE COURT: Okay. Threated to commit violence against him?

"THE DEFENDANT: Yes, sir.

"THE COURT: *And when you threatened to commit violence against him or to hit him, as you stated, did you do it with the intent to put him in fear?*

"THE DEFENDANT: *Yes, sir.*

"THE COURT: State satisfied with the factual basis?

"[THE STATE]: Yes, sir.

"THE COURT: The Court will find that the defendant knowingly, intelligently, voluntarily waived his rights, including his right to a jury trial. Furthermore, *based on his plea of guilty, his factual basis that he told me and his responses to the questions*, I will find and adjudge him guilty of criminal threat, a severity level nine person felony as alleged in the Amended Information." (Emphases added.)

Based on this colloquy the district court rejected Oliver's challenge in the present case to his criminal history, revoked Oliver's probation in 18CR2402, and ordered him to serve his original underlying prison sentences for his convictions.

Oliver appeals.

4

Oliver's basic contention is that the district court improperly included in his criminal history his earlier criminal threat conviction. Under K.S.A. 2020 Supp. 21-6810(d)(9), "[p]rior convictions of a crime defined by a statute that has since been determined unconstitutional by an appellate court shall not be used for criminal history scoring purposes." Here, the issue is whether Oliver had been convicted of reckless criminal threat under that portion of K.S.A. 2018 Supp. 21-5415, which has been declared unconstitutional by our Supreme Court in *Boettger*. If so, Oliver contends that the inclusion of this criminal threat conviction in his criminal history rendered illegal the sentence imposed in his current drug case. Whether a sentence is illegal is a question of law over which we exercise de novo review. *State v. Sartin*, 310 Kan. 367, 369, 446 P.3d 1068 (2019).

*The Change in the Law Under* Boettger

As noted earlier, our Supreme Court held in *Boettger* that the provision in K.S.A. 2018 Supp. 21-5415(a)(1), which criminalized a threat of violence made in reckless disregard of the risk of causing fear, is unconstitutional. The remaining provision of K.S.A. 2018 Supp. 21-5415(a)(1), which criminalized intentional criminal threats, remained intact.

The central question is whether the holding in *Boettger* had any effect on Oliver's criminal threat conviction. In *State v. Murdock*, 309 Kan. 585, 592, 439 P.3d 307 (2019), the court recognized that "subsequent developments in the law . . . cannot transform a once legal sentence into an illegal sentence." Thus, a sentence that is legal when imposed does not become illegal because of a change in the law that occurs after the sentence is pronounced *unless* the change in the law occurs "while the sentence is pending an appeal from the judgment of conviction." K.S.A. 2020 Supp. 22-3504(c)(2).

5

Here, Oliver pleaded guilty to criminal threat in August 2014. The district court sentenced Oliver in our current case in March 2019. Oliver had 14 days thereafter in which to appeal his sentence. K.S.A. 2020 Supp. 22-3608(c). When Oliver did not appeal, his sentence became final. Our Supreme Court did not decide *Boettger* until October 2019—well after Oliver's sentence became final. Thus, the change in the law in *Boettger* had no impact on Oliver's sentence for his criminal threat conviction.

To avoid this outcome, Oliver contends that the timing of the *Boettger* decision is irrelevant. He argues that the *Boettger* court relied on the earlier decision in *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003), in deciding that a portion of the Kansas criminal threat statute was unconstitutionally vague. He contends the change in the law occurred not in 2019 when *Boettger* was decided but rather in 2003 when *Black* was decided—well before Oliver's sentences were imposed in the current case. Thus, he contends that he is entitled to benefit from the holding in *Black*.

The *Boettger* court relied heavily on the United States Supreme Court's decision in *Black*. In *Black*, the Court held that the part of Virginia's cross-burning statute that treated any cross-burning as prima facia evidence of an intent to intimidate violated the First Amendment because, while the cross-burning may be a form of illegal intimidation, "[t]hat same act may mean only that the person is engaged in core political speech." 538 U.S. at 365. Thus, a defendant could be convicted under this Virginia statute even though the defendant was exercising First Amendment rights rather than burning the cross with the intent to place another person in fear of bodily harm. 538 U.S. at 365.

But *Black* did not address Kansas' criminal threat statute. The Kansas criminal threat statute had to await the holding in *Boettger*. As a result, another panel of this court rejected the argument now advanced by Oliver that the date of the decision in *Black* controls as to when a change in Kansas' criminal threat law occurred. In *State v. Miller*,

6

No. 121,792, 2020 WL 6533257, at *4 (Kan. App. 2020) (unpublished opinion), *rev. denied* 313 Kan. 1045, the court stated:

> "*Black* did not hold, or even address, that the Kansas offense of reckless criminal threat was unconstitutional. *Black* addressed a Virginia cross-burning statute and whether it violated the First Amendment's Free Speech Clause. 538 U.S. at 358-63. The Kansas Supreme Court acknowledged that neither *Black* nor any other United States Supreme Court case addressed whether a threat issued in reckless disregard of causing fear was unconstitutionally overbroad. *Boettger*, 310 Kan. at 809. The *Boettger* court reiterated that '*Black* did not directly address whether the First Amendment tolerates a conviction for making a threat even though there was no intent to cause fear.' *Boettger*, 310 Kan. at 812.

> "Granted, the Kansas Supreme Court analyzed the reasoning in *Black* because 'the decision explains the intent necessary to have a true threat prosecuted without violating the First Amendment's protections.' *Boettger*, 310 Kan. at 812. The Kansas Supreme Court explained that the *Black* decision was insightful because it conveyed a general definition of true threats—threats that are not protected by the First Amendment—which required intentional conduct. *Boettger*, 310 Kan. at 822. Using *Black's* definition of true threats, the *Boettger* court examined the Kansas criminal threat statute and found the offense of reckless criminal threat was unconstitutional. 310 Kan. at 822-23.

> "In sum, it was *Boettger*, not *Black*, that declared the Kansas reckless criminal threat statute unconstitutional."

We are persuaded by the reasoning in *Miller* and conclude that the key date for our analysis is the date of the decision in *Boettger*, not *Black*. The district court correctly denied Oliver's criminal history challenge because the sentence for his criminal threat conviction was final before our Supreme Court decided *Boettger*.

*Application of the Modified Categorical Approach*

The district court used the modified categorical approach described in *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), in order to determine the nature of Oliver's criminal threat conviction. Oliver contends that the plea colloquy in Oliver's criminal threat case did not definitively establish that he committed an intentional criminal threat. He contends that his statements to the court at his plea hearing could fall within the rubric of a reckless criminal threat or could merely be indicative of reckless, impulsive bluster rather than an intentional threat. We will address those two contentions shortly.

Courts generally calculate a defendant's criminal history by looking at the statutory elements of the defendant's prior convictions. But in *Descamps*, the United States Supreme Court recognized a "modified categorical approach" that allowed the sentencing court to look beyond the statutory elements of the prior conviction when that prior conviction "comprises multiple, alternative versions of the crime" and "a later sentencing court cannot tell, without reviewing something more, if the defendant's conviction" arose under any particular alternative. 570 U.S. at 261-62. In such cases, courts may "examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." 570 U.S. at 262. That "'limited class of documents'" includes "'transcripts of plea colloquies.'" *State v. Obregon*, 309 Kan. 1267, 1274, 444 P.3d 331 (2019) (quoting *Johnson v. United States*, 559 U.S. 133, 144, 130 S. Ct. 1265, 176 L. Ed. 2d 1 [2010]).

Oliver had been charged with both of the statutory alternatives for criminal threat under K.S.A. 2013 Supp. 21-5415(a)(1), which provided:

> "(a) A criminal threat is any threat to:
> (1) Commit violence communicated *with intent to place another in fear*, or to

8

cause the evacuation, lock down or disruption in regular, ongoing activities of any building, place of assembly or facility of transportation, *or in reckless disregard of the risk of causing such fear* or evacuation, lock down or disruption in regular, ongoing activities." (Emphases added.)

This broad charge under K.S.A. 2013 Supp. 21-5415(a)(1) did not shed light on which type of criminal threat Oliver engaged in. But the plea colloquy we have already recounted does. In responding to the district court's questions, Oliver explicitly stated that he intended to place Howard in fear by threatening violence without ever mentioning or characterizing his conduct as being reckless or bluster. The district court accepted Oliver's guilty plea "based on his plea of guilty, his factual basis that he told me and his responses to the questions." The only evidence before the court to support Oliver's conviction for criminal threat was that Oliver acted intentionally, not recklessly. The district court properly applied the modified categorical approach in arriving at the conclusion that Oliver's prior criminal threat conviction was for intentional—not reckless—conduct. The district court's application of the modified categorical approach was in conformity with *Johnson*; *Obregon*, 309 Kan. at 1274; and *State v. Dickey*, 301 Kan. 1018, 1038, 350 P.3d 1054 (2015).

*"Trash Talk" vs. an Intentional Threat*

That portion of K.S.A 2013 Supp. 21-5415(a)(1), which criminalizes a threat of violence made with the intent to place another in fear, is not affected by the holding in *Boettger*. So Oliver advances the argument that his threat to Howard "could be viewed as just trash talk during an argument, as opposed to an intentional threat." To support this argument, he compares his case to *State v. Lindemuth*, 312 Kan. 12, 470 P.3d 1279 (2020), and *State v. Cardillo*, No. 120,606, 2021 WL 1149145 (Kan. App. 2021) (unpublished opinion).

9

Neither *Lindemuth* nor *Cardillo* applies. Both involved jury trials in which the relevant issue was whether the evidence supported a reckless or an intentional criminal threat. In *Lindemuth*, our Supreme Court determined that the defendant's threats may have been impulsive bluster rather than an intentional threat. 312 Kan. at 18. A similar finding was made in *Cardillo*, 2021 WL 1149145, at \*5. But in our present case there was no trial. Oliver pled guilty and admitted to the court that he intentionally threatened the victim with violence in order to put him in fear. There is a complete lack of any evidence in the plea hearing transcript that Oliver recklessly threatened Howard. By Oliver's own admissions to the court, his threat was intentional and not merely trash talk. Even if the date of the *Black* decision controlled over *Boettger*, Oliver's argument does not successfully place Oliver in the safe harbor of the holdings in either *Boettger* or *Black*.

*Proof of Reckless Conduct by Proving Intentional Conduct*

Oliver also contends that under K.S.A. 2020 Supp. 21-5202(c), proof that a defendant acted intentionally also constitutes proof that a defendant acted recklessly. K.S.A. 2020 Supp. 21-5202(c) provides: "Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged. If recklessness suffices to establish an element, that element also is established if a person acts . . . intentionally." Such an outcome flies in the face of *Boettger*, which only found unconstitutional a conviction based on reckless conduct and left intact a conviction based on intentional conduct. Oliver's contention would result in every criminal threat—whether intentional or reckless—being declared unconstitutional under *Boettger*.

Besides, we fail to see how this advances Oliver's cause. If Oliver's admission to the court that he acted intentionally also establishes that he acted recklessly, such an admission to recklessness would not have been saved by *Boettger*, which had not yet been decided. Had the timing of *Boettger* favored Oliver, the holding in *Boettger* still

10

would not have saved Oliver because the admission that he acted intentionally would remain unaffected by the holding in *Boettger*.

*Conclusion*

In resolving the question whether Oliver's conduct in his prior criminal threat case was intentional or reckless, the district court properly applied the modified categorical approach described in *Descamps* by examining the plea colloquy in which Oliver unequivocally stated that he intentionally threatened Harris with violence in order to place him in fear. Moreover, no reasonable reading of the record could result in the conclusion that Oliver's conduct was reckless rather than intentional. As a result, Oliver's criminal threat conviction was unaffected by our Supreme Court's holding in *Boettger* that rendered convictions based on recklessness unconstitutional. Thus, we find no error in the district court including Oliver's criminal threat conviction in his criminal history score in order to arrive at sentences in Oliver's current drug case.

Affirmed.