NOT DESIGNATED FOR PUBLICATION

No. 126,388

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

ANTONIO W. HIGHTOWER,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Submitted without oral argument. Opinion filed January 31, 2025. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: Antonio W. Hightower became upset with his former girlfriend, and his actions resulted in four criminal charges being filed against him. The jury acquitted him on the charges of kidnapping, aggravated battery, and robbery. In this direct appeal, Hightower timely appeals his convictions and sentences for the two crimes the jury convicted him of—criminal threat and criminal restraint. He argues (1) the district court erred by failing to give three different unrequested jury instructions and (2) the State committed multiple prosecutorial errors during its closing argument. After careful review, we find no error and affirm.

1

Hightower was charged with kidnapping, criminal threat, aggravated battery, and robbery. The charges stemmed from a dispute with M.M., with whom he had previously been in a relationship and had a child. Hightower came to M.M.'s home to deliver some barstools. M.M. was about to leave for work, and Hightower offered to give her a ride. The two began arguing on the way to M.M.'s workplace. Hightower was upset that M.M. was in a new relationship, and M.M. was upset about Hightower not maintaining visits with their child.

When they reached M.M.'s workplace, M.M. got out of the car and began walking away while Hightower was still talking. Hightower got out and pursued M.M., grabbing her purse and eventually forcing her into the back seat of his car. Hightower then drove away with M.M. in the vehicle. She asked him to let her out, but he refused. Hightower threatened M.M., saying he was "going to beat her ass." As they got further from M.M.'s workplace, Hightower told M.M., "I already got prison time waiting for me so I don't give a fuck about any of this." M.M. began crying, to which Hightower responded: "[T]here isn't any sense [in] crying, bitch. You ain't going to be crying when I get you where we're going."

Hightower eventually stopped at a red light, and M.M. managed to unlock the rear driver-side door and exit the vehicle. Hightower attempted to stop her. A nearby driver saw M.M. fleeing from the vehicle and called 911. M.M. headed to a nearby store on foot. Hightower turned his vehicle around and pulled into the store parking lot. He got out and began struggling with M.M., trying to take her purse. The contents spilled out as Hightower took the purse from M.M. Other store patrons intervened, and Hightower drove off with M.M.'s purse. M.M. picked up the items that had spilled onto the parking lot, including Hightower's keys.

M.M. was subsequently taken home and called 911. She gave statements to the responding officers detailing the relevant events. Several days later, M.M. again gave statements in a recorded interview with Detective Timothy J. Reynolds of the Wichita Police Department. Hightower was later arrested. Hightower told the officers the argument was over M.M. not letting him see their child. He claimed M.M. got out of his car with his keys in her hands, although the car kept running because it had a push start ignition. He claimed he grabbed M.M.'s purse because he thought his keys were inside it. Hightower admitted to struggling with M.M. over her purse but claimed she got back in his car on her own initiative. He said M.M. later jumped out of his car with his keys in her purse, so he pulled into the store parking lot to retrieve his keys. Hightower admitted to taking M.M.'s purse, but his keys were not inside so he left the purse with his grandmother. M.M. later obtained her purse back with the help of Hightower's grandmother.

Hightower's jury convicted him of criminal restraint as a lesser-included offense of kidnapping as well as criminal threat but acquitted him of robbery and aggravated battery. The district court sentenced Hightower to 8 months' imprisonment for criminal threat with a concurrent 12-month jail sentence for criminal restraint, suspended to 12 months' supervised probation. Additional facts are set forth as necessary.

ANALYSIS

*No Jury Instruction Error*

Hightower argues the district court erred by not giving the jury (1) a defense of property instruction for the criminal threat and criminal restraint charges, (2) a limiting instruction based on the comments he made to M.M. about having "prison time waiting for [him]," and (3) a unanimity instruction.

*Standard of Review*

> "'When analyzing jury instruction issues, we follow a three-step process:
>
> "(1) determining whether [we] can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal;
>
> "(2) considering the merits of the claim to determine whether error occurred below; and
>
> "(3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless."'" *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021).

At the second step, we "consider whether the instructions were legally and factually appropriate, using an unlimited standard of review of the entire record." *Holley*, 313 Kan. at 254. In determining whether an instruction was factually appropriate, we must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. 313 Kan. at 255.

Whether a party has preserved "a jury instruction issue affects [our] reversibility inquiry at the third step." 313 Kan. at 254. When a party asserts an instruction error for the first time on appeal, "the failure to give a legally and factually appropriate instruction is reversible only if the failure was clearly erroneous." *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018); see K.S.A. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous."). To establish clear error, we must be firmly convinced the jury would have reached a different verdict if the instructional error had not occurred. *State v. Shields*, 315 Kan. 814, 823-24, 511 P.3d 931 (2022). Hightower, as the party claiming error, has the burden to show clear error. See K.S.A. 22-3414(3); *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021). The "clearly erroneous" principle is not a standard of review or a framework for determining whether error occurred. Instead, it supplies a basis for

determining whether an error requires reversal of a conviction. *State v. Lewis*, 299 Kan. 828, 856, 326 P.3d 387 (2014).

*Discussion*

Hightower admits he did not request the three instructions he now asserts should have been given at trial. Accordingly, he must demonstrate the failure to give the instructions was clear error. See K.S.A. 22-3414(3). Each of his claimed instructional errors will be discussed separately.

*Defense of Property Instruction*

As a preliminary matter, the State argues the district court's failure to give this instruction was invited by Hightower. But we have not found in the record where Hightower affirmatively invited the error. The State cites to where it told the district court the defense would not be requesting the instruction and defense counsel did not dispute the State's account. Defense counsel's silence in these circumstances is not significant. The State was not objecting to the district court giving the instruction, nor did Hightower decline an offer by the district court to give the instruction. Here, there is no meaningful distinction between standing silent as opposed to never requesting or discussing the instruction at all. We will review for clear error.

We agree an instruction on defense of property is appropriate for the jury to consider as a defense to criminal threat and criminal restraint when one is trying to obtain his or her property back. See K.S.A. 21-5111(n) (criminal restraint not "'[f]orcible felony'"); K.S.A. 21-5225 (use of force to defend property); K.S.A. 21-5226(a) (limiting defense to nonforcible felonies); *State v. Lindemuth*, 55 Kan. App. 2d 419, 423-26, 417 P.3d 262 (2018) (defense of workplace instruction applied to criminal threat). Therefore, such an instruction could be legally appropriate. However, Hightower fails to establish

5

the instruction would have been factually appropriate. Hightower did not testify, and the only testimony Hightower cites to is about a statement he made to an investigating officer that M.M. took Hightower's keys at some point. But there was no evidence Hightower committed the acts underlying the criminal threat and criminal restraint charges in defense of property. Those charges were based on what happened when Hightower forced M.M. back into his car and the things he did and said while she was in his car. M.M. testified she was forced into the car against her will and Hightower threatened her as he drove. Hightower told investigating officers M.M. got into the car on her own accord and denied ever making such statements. The instruction was not factually appropriate.

K.S.A. 21-5225 provides:

"A person who is lawfully in possession of property other than a dwelling, place of work or occupied vehicle is justified in the use of force against another for the purpose of preventing or terminating an unlawful interference with such property. Only such use of force *as a reasonable person would deem necessary* to prevent or terminate the interference may *intentionally* be used." (Emphases added.)

Nothing in Hightower's account of the events suggests he acted in defense of property; in fact, he denied to the officers ever doing the things he now claims were in defense of property. Hightower's blatant denial of the allegations does not reflect an intention to use force, much less that he deemed it necessary and reasonable. There is nothing to show his state of mind, nor is it evident from his statements to the officers because he did not testify.

Insofar as he cites to anything suggesting he acted in defense of property, such statements were made by defense counsel in opening and closing arguments. Statements of counsel are not evidence. See *State v. Akins*, 298 Kan. 592, Syl. ¶ 6, 315 P.3d 868 (2014). Citing to the place in the record where the same argument was made below does

6

not provide proper factual support to show error on appeal. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013).

Because Hightower has not shown the instruction was factually appropriate, we need not consider whether failing to give the instruction was clearly erroneous. But even if he could show the instruction was factually appropriate, he cannot firmly convince us giving the instruction would have made a difference. Based on the evidence presented, the jury could not have found the threats Hightower made and the force he used was necessary under an objectively reasonable standard. Even if M.M. took Hightower's keys when she got out of his car at her workplace and started heading inside for her shift, she was not running away with them. Hightower knew where she was and knew she would have remained there for her shift. A reasonable person under these circumstances would calmly ask for the keys to be returned and, failing that, call law enforcement.

*Limiting Instruction*

We agree with the district court that Hightower's statement "I already got prison time waiting for me" was problematic, but he made a specific decision not to request a limiting instruction as the trial proceeded. The State claims Hightower invited the error because the district court noted this comment may be problematic and discussed giving a limiting instruction with the parties, either then or later in the proceedings, but Hightower declined. Instead, Hightower said he might ask for an instruction based on the relevancy, or lack thereof, of his purported comment. Hightower ultimately said he was fine moving on if the State clarified the comment. At Hightower's request, Reynolds then read the quote verbatim as it appeared in his report: "I already got prison time waiting for me so I don't give a fuck about any of this."

"[A] litigant may not invite an error and then complain of the error on appeal." *State v. Green*, 315 Kan. 178, 183, 505 P.3d 377 (2022). "'The doctrine of invited error

7

precludes a party from asking a district court to rule a given way and thereafter challenging the court's ruling on appeal.'" *State v. Douglas*, 313 Kan. 704, 707, 490 P.3d 34 (2021). There is no bright-line rule for application of the doctrine. "That party's actions inducing a court to make the claimed error and the context in which those actions occurred must be scrutinized to decide whether to employ the doctrine." 313 Kan. at 707.

Here, the district court recognized there might be a problem and discussed the possibility of a limiting instruction, but Hightower declined the offer. Hightower later indicated he was fine moving on if the State had Reynolds clarify the context by providing the exact quote, which the State did. To the extent it was erroneous for the district court not to give the instruction, Hightower invited the error based on the way he chose to proceed with the trial. He cannot now complain the district court did not give an instruction he said he did not want and further said he was fine with the direct quote of his statement being provided to the jury.

*Unanimity Instruction*

The State argues Hightower has abandoned this claim because he offers only conclusory statements and makes no argument to show how his treatment of M.M. before, during, and after she escaped from his car could be viewed as multiple acts instead of just one continuous act.

When a defendant asserts a violation of his or her right to a unanimous jury verdict, it presents a question of law over which we exercise unlimited review. We must first determine whether the jury was presented with a multiple acts case. *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014). A court is presented with a multiple acts case when several acts are alleged, any of which could independently constitute the crime charged. *State v. Cottrell*, 310 Kan. 150, 154, 445 P.3d 1132 (2019). That is, each legally and factually separate incident could independently satisfy the elements of the charged

crime. 310 Kan. at 155. "'When a case involves multiple acts, the jury must be unanimous in finding which specific act constitutes the crime.'" *State v. Hunt*, 61 Kan. App. 2d 435, 443, 503 P.3d 1067 (2021).

Our Supreme Court has identified four factors for determining whether the act was unitary in a multiple acts case:

> "'(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.' [Citation omitted.]" *State v. Moyer*, 306 Kan. 342, 360, 410 P.3d 71 (2017).

Here, Hightower's acts of struggling with M.M. in her workplace's parking lot, forcing her into his car, driving away with her, refusing to let her out, chasing her down when she managed to get out and run away, and again struggling with her in a store parking lot all occurred in short order. Although they did not all occur in the same location, the acts were part of an ongoing course of conduct in which Hightower drove M.M. approximately a mile-and-a-half from her workplace. There was a clear causal relationship between the acts, and there was no meaningful intervening event. See 306 Kan. at 360. The evidence reflected M.M. desired to get away from Hightower and Hightower desired to keep her from doing so. There does not appear to be a fresh impulse motivating Hightower's conduct. Hightower was consistently trying to prevent M.M. from leaving in a continuous series of events, book-ended by struggling with M.M. over her purse in the parking lots of two different businesses.

Further, the State is correct Hightower falls short of his burden to show error in his briefing of the issue. In his brief, Hightower does not meaningfully address the factors to determine whether this was a multiple acts case. Rather, he provides conclusory assertions that his various actions could have constituted the offenses charged. He also asserts, without meaningful explanation, the State did not elect a particular act on which the charges were based. We find the point has been waived or abandoned due to inadequate briefing. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). No unanimity instruction was required.

## *No Prosecutorial Error*

Hightower argues the State committed prosecutorial error when the prosecutor twice used the phrase "I think" while discussing the evidence in closing arguments. He further asserts the prosecutor misstated the law regarding the use of force.

### *Standard of Review*

We use a two-step process to evaluate claims of prosecutorial error: error and prejudice. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there

10

is no reasonable possibility that the error contributed to the verdict.' We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

*Discussion*

Hightower unpersuasively complains of two comments in the State's closing argument. The first comment was, "Look at the evidence and decide was she really actually inconsistent. I think you'll find she wasn't, but either way, you'll have the evidence and that's for you to determine." The second comment was:

"Review those exhibits if you need to about [the other driver's] statements. I think you'll find what the exhibits show is what [she] testified to, and the exhibits will show that [M.M.] fell from that car, not necessarily that she saw what was happening in the car. She was very clear. She couldn't see what was happening in the car, but she saw [M.M.] fall to the ground and get up."

"In general, a prosecutor may not offer a jury the prosecutor's personal opinion as to the credibility of a witness because such a comment is unsworn, unchecked testimony, not commentary on the evidence of the case. The determination of the truthfulness of a witness is for the jury." *Akins*, 298 Kan. 592, Syl. ¶ 6. But a prosecutor may argue the evidence demonstrates a defendant is guilty so long as the prosecutor does not state his or her personal opinion regarding the ultimate guilt or innocence of the defendant. *State v. Mireles*, 297 Kan. 339, 368-69, 301 P.3d 677 (2013).

"Prosecutors enjoy wide latitude in crafting closing arguments. This latitude allows a prosecutor to make reasonable inferences based on the evidence, but it does not extend so far as to permit arguing facts not in evidence. For instance, '[p]rosecutors are not allowed to make statements that inflame the passions or prejudices of the jury or

11

distract the jury from its duty to make decisions based on the evidence and the controlling law.' Arguments must remain consistent with the evidence. If they are not, the first prong of the prosecutorial misconduct test is met, and an appellate court must then consider whether the misstatement prejudiced the jury against the defendant and denied the defendant a fair trial. [Citations omitted.]" *State v. Killings*, 301 Kan. 214, 228, 340 P.3d 1186 (2015).

When determining whether the prosecutor's statement falls outside the wide latitude given to the prosecutor, we do not analyze the statement in isolation but consider the context in which it was made. *State v. Ross*, 310 Kan. 216, 221, 445 P.3d 726 (2019). "Often the line between permissible and impermissible argument is context dependent." *State v. Martinez*, 311 Kan. 919, 923, 468 P.3d 319 (2020). In *State v. King*, 308 Kan. 16, 31, 417 P.3d 1073 (2018), our Supreme Court recognized phrases such as "'I think'" may be used as "'mere verbal tics'"; however, it cautioned prosecutors the better practice would be to use less subjectively loaded phrases, such as "'the evidence shows' or 'I submit.'"

Here, the full statement in context was, "I think you'll find," which was not a statement of the prosecutor's belief. It was an opening phrase of what she thought the jury would see when it considered all of the evidence. Although the prosecutor could have accomplished the same thing without using the phrase "I think," she did not portray her personal opinion on Hightower's guilt; rather, it was a figure of speech used to describe the evidence. The context of the prosecutor's argument was what *the evidence* showed, not what the prosecutor personally believed. And the prosecutor repeatedly told the jurors it was for them to decide based on the evidence and they had to determine the weight and credibility of the evidence.

The prosecutor's comments in closing argument were not erroneous; rather, she set forth a permissible argument in the context in which the statements were made. We cannot draw a bright-line rule that any statement by a prosecutor that uses the words "I

12

think" falls outside the wide latitude afforded to prosecutors to argue the State's case; context is paramount. See *Martinez*, 311 Kan. at 923. Because Hightower cannot show error, there can be no prejudice. Thus, we decline to address prejudice in the alternative.

Hightower further complains the prosecutor misstated the law regarding his use of force. Specifically, Hightower takes issue with the prosecutor's statement:

> "But here's the deal. Okay. Attacking someone in public, pushing them in your vehicle, driving with them in a locked vehicle, pulling them back in when they try to escape, fighting with them in a parking lot. None of that is how to solve a property dispute regardless of ownership.
> "That's what the law is. It doesn't matter if he's trying to get back his own keys. That doesn't matter. The point is the keys don't matter."

What Hightower fails to acknowledge is this comment was made in response to his arguments and general line of questioning during cross-examination regarding the robbery charge. In fact, the prosecutor explicitly referred to the language of the jury instruction on robbery. The prosecutor did not misstate the law. The comments were made in relation to the controlling law the district court had instructed the jury on, which provided: "The ownership of property taken is not an element of robbery."

Hightower misconstrues the record by claiming these comments were in response to his criminal restraint and criminal threat convictions. That was not the context of the prosecutor's argument and, again, context is critical. See *Martinez*, 311 Kan. at 923. Hightower's argument is generally unpersuasive considering he told M.M. he "already [had] prison time waiting for [him] so [he did not] give a fuck about any of this." To lawfully use force, the use of force must be reasonably necessary; that is, it must have been objectively reasonable. See K.S.A. 21-5225. It seems disingenuous for someone who believed his or her actions at the time would result in imprisonment to now claim those actions were necessary or objectively reasonable.

13

Even charitably assuming Hightower forcing M.M. into his car, driving her away against her will, threatening to "beat her ass," making additional threats, refusing to let her exit the vehicle, chasing her down when she got out and ran away, and forcibly taking her purse before driving off were somehow legitimate actions in defense of property, Hightower was still not prejudiced. His argument on this point assumes a defense of property instruction should have been given. As previously explained, such an instruction would have been factually inappropriate. The prosecutor did not undermine a defense Hightower had no basis to argue. We observe no reversible prosecutorial error; thus, Hightower is not entitled to a new trial.

Affirmed.