NOT DESIGNATED FOR PUBLICATION

No. 127,243

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROMAN LEE DEWEY,
*Appellant*.

MEMORANDUM OPINION

Appeal Labette District Court; FRED W. JOHNSON JR., judge. Submitted without oral argument. Opinion filed May 8, 2026. Reversed in part, sentence vacated, and case remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Mandy Johnson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., CLINE, J., and COURTNEY D. CRAVER, District Judge, assigned.

ISHERWOOD, J.: Roman Lee Dewey appeals his sentence because of his criminal history score. He argues that the district court erred by giving him a criminal history score of B based on a conviction for reckless criminal threat, an unconstitutional conviction. He also contests the requirement to register under the Kansas Offender Registration Act (KORA).

1

FACTUAL AND PROCEDURAL BACKGROUND

Dewey pleaded no contest to abuse of a child, in violation of K.S.A. 2017 Supp. 21-5602(a)(2). Under the plea agreement, Dewey acknowledged that he may be required to register as a violent offender for at least 15 years. At the plea hearing, the district court asked if Dewey would be expected to register before directing the State to prepare a registration notice. Defense counsel specified that Dewey would likely be required to register as a violent offender by agreement of the parties. The district court found Dewey guilty upon a plea of no contest but failed to make any finding that he was an offender under KORA.

A presentence investigation (PSI) report showed Dewey's criminal history score was B, including a 2009 conviction for the person felony of criminal threat. Dewey objected, arguing that our Supreme Court declared reckless criminal threat unconstitutional and such convictions cannot be included in a criminal history score.

An amended PSI report excluded the criminal threat from its calculus, leading to a criminal history score of D.

At the next hearing, Dewey asked the district court to pronounce sentence that day, asserting that he had completed the sentence he would serve if sentenced to a level 5 person felony with a criminal history score of D. The State objected to the amended PSI report, requesting time to file a written objection.

The State's written objection acknowledged that our Supreme Court found that reckless criminal threat convictions were constitutionally overbroad in *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019). But the State argued that the United States Supreme Court overruled *Boettger* when it determined that a mental state of recklessness was sufficient for a conviction in *Counterman v. Colorado*, 600 U.S. 66, 143 S. Ct. 2106, 216

2

L. Ed. 2d 775 (2023). The State also argued that when there are multiple versions of a crime, a district court should use a modified categorical approach to review the prior conviction beyond the statutory elements by looking to documents in the record which show the elements forming the basis of the prior conviction.

After the district court obtained a transcript of the criminal threat plea hearing from 2009, Dewey supplemented his response to the State's objection to the amended PSI report. Dewey argued that the factual basis in the transcript of that 2009 plea hearing did not establish that the criminal threat was made intentionally rather than recklessly.

The district court found that the factual basis from the 2009 plea hearing showed that Dewey made a criminal threat both intentionally and recklessly. The district court found that Dewey's correct criminal history score was B. At sentencing, the district court ordered Dewey to serve 128 months (10 years, 8 months) in prison, also ordering offender registration for 15 years.

Dewey timely appeals.

LEGAL ANALYSIS

I. *Did the evidence show that Dewey's 2009 conviction was for intentional criminal threat?*

Dewey argues that the district court incorrectly calculated his criminal history score because the State failed to prove that his prior conviction for criminal threat was constitutionally valid. The State responds that reckless criminal threat can be included in a criminal history score and, alternatively, that Dewey's conviction was for intentional criminal threat anyway.

*Standard of Review*

Whether a sentence is illegal is a question of law over which appellate courts exercise unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

An illegal sentence is a sentence: (1) imposed by a court without jurisdiction; (2) that does not conform to the applicable statutory provisions, either in character or the term of punishment; or (3) that is ambiguous about the time and manner in which it is to be served. K.S.A. 22-3504(c)(1); *State v. Mitchell*, 315 Kan. 156, 158, 505 P.3d 739 (2022).

A court may correct an illegal sentence at any time while the defendant is serving the sentence. K.S.A. 22-3504(a). An illegal sentence may be corrected for the first time on appeal or sua sponte. *State v. Gomez*, 320 Kan. 3, 22, 561 P.3d 908 (2025); *State v. Zongker*, 319 Kan. 411, 437, 555 P.3d 698 (2024).

Under K.S.A. 21-6814(a), an offender may admit to criminal history in open court or the sentencing court will determine criminal history by a preponderance of the evidence at the sentencing hearing. See *State v. Corby*, 314 Kan. 794, 797, 502 P.3d 111 (2022). A defendant's admission to criminal history serves as an admission to the existence and classification of prior convictions, relieving the State of its burden of presenting additional evidence. 314 Kan. at 797-98.

When a defendant exercises the statutory right to challenge the accuracy of the convictions contained in the criminal history worksheet at the time of sentencing, the State bears the burden to prove by a preponderance of the evidence that the defendant committed the crime. K.S.A. 21-6814(c); *Daniels*, 319 Kan. at 347 (stating that opportunity to challenge accuracy of conviction in criminal history worksheet "is procedurally specific and time sensitive").

All prior convictions must be counted in determining a defendant's criminal history score unless the convictions constitute an element of the present crime, enhance the severity level, or elevate the classification from a misdemeanor to a felony. K.S.A. 21-6810(d)(10); *State v. Fowler*, 311 Kan. 136, 142, 457 P.3d 927 (2020). Convictions which have been declared unconstitutional are also excluded from a defendant's criminal history score. *State v. Smith*, 320 Kan. 62, 91, 563 P.3d 697 (2025).

Prior convictions cannot be excluded from criminal history pursuant to a plea agreement. K.S.A. 21-6812(f); *State v. Unruh*, 263 Kan. 185, 188-89, 946 P.2d 1369 (1997) (citing previous codification at K.S.A. 21-4713[f]).

*Analysis*

Under the Revised Kansas Sentencing Guidelines Act, K.S.A. 21-6801 et seq., a district court imposes a sentence on an offender based on two key data points: first, the severity level of the crime committed and second, the criminal history of the offender. The district court then looks to the appropriate grid box on the sentencing grid and chooses the number of months appropriate for the offense, with some consideration given to recommendations in a plea agreement.

All prior convictions and juvenile adjudications must be considered and scored with only a few exceptions, including the one relevant here: "Prior convictions of a crime defined by a statute that has since been determined unconstitutional by an appellate court shall not be used for criminal history scoring purposes." K.S.A. 21-6810(d)(9); see *Smith*, 320 Kan. at 91. The State bears the burden of establishing the defendant's criminal history score by a preponderance of the evidence. K.S.A. 21-6814(a); *State v. Obregon*, 309 Kan. 1267, 1275, 444 P.3d 331 (2019).

5

Dewey's argument begins with our Supreme Court's holding that a conviction for criminal threat based solely on recklessness is unconstitutional. *Boettger*, 310 Kan. at 822-23. Our Supreme Court reasoned that K.S.A. 2018 Supp. 21-5415(a)(1), which criminalizes reckless conduct, was unconstitutionally overbroad because it provided no basis for distinguishing constitutionally protected speech from speech which does not warrant protection under the First Amendment to the United States Constitution. 310 Kan. at 822-23. Only intentional criminal threat is a constitutionally valid conviction; reckless criminal threat is not. 310 Kan. at 822-23. This court has applied *Boettger* to hold that where it is unclear which version of criminal threat resulted in a defendant's prior conviction, the district court errs by including that conviction in calculating the defendant's criminal history score. *State v. Degand*, 63 Kan. App. 2d 457, 465, 530 P.3d 439 (2023); *State v. Holloman*, No. 125,062, 2023 WL 3143656, at *5 (Kan. App. 2023) (unpublished opinion); *State v. Howell*, No. 124,650, 2022 WL 4003626, at *3-4 (Kan. App. 2022) (unpublished opinion); *State v. Martinez-Guerrero*, No. 123,447, 2022 WL 68543, at *5-6 (Kan. App. 2022) (unpublished opinion). When the defendant was obviously and explicitly charged with intentional criminal threat, then that conviction is properly included in his criminal history score. *State v. Blow*, No. 126,079, 2024 WL 1338960, at *3 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan. 863 (2025).

In this case, Dewey's PSI report initially did not specify whether his prior conviction was for making an intentional or a reckless criminal threat. The amended PSI report also did not specify recklessness or intent but left the conviction unscored, with the following note: "(State v. Boettger)." If Dewey committed criminal threat intentionally, then the first PSI report correctly gave him a criminal history score of B. If Dewey committed criminal threat recklessly, then the second PSI report correctly gave him a criminal history score of D. Dewey's crime of conviction is a severity level 5 felony and the plea deal led to an agreement to the aggravated sentence within the grid box. As Dewey correctly argued to the district court, a conviction of this crime with a criminal

history of D would result in an aggravated prison sentence of 55 months (4 years, 7 months). But with a criminal history score of B, the aggravated prison sentence would be 128 months (10 years, 8 months). The distinction between intentional and reckless criminal threat therefore results in a difference of roughly six years of prison time.

The district court reviewed these issues at the sentencing hearing. It used a modified categorical approach, which means reviewing a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction. *Obregon*, 309 Kan. at 1274. This limited class of documents may include plea agreements, transcripts of plea hearings, findings of fact and conclusions of law from a bench trial, jury instructions, and completed verdicts. Our Supreme Court approved of a modified categorical approach to determining the elements of a prior conviction in *State v. Dickey*, 301 Kan. 1018, 1037-38, 350 P.3d 1054 (2015).

Typically, appellate courts review district court factfinding for substantial competent evidence. *Corby*, 314 Kan. at 796. But where, as here, the appellate court has the same access to the motions, records, and files as the district court, then this court exercises unlimited review. *Mitchell*, 315 Kan. at 158 (reviewing denial of a motion to correct illegal sentence); *State v. Wilson*, 308 Kan. 516, 520, 421 P.3d 742 (2018) (unlimited review of a motion to withdraw plea); *Degand*, 63 Kan. App. 2d at 460-65 (while never stating its standard of review, nevertheless conducting an unlimited review of the record to determine that the State failed to prove that the prior conviction was for intentional threat).

Generally, resolution of appeals involving the proper classification of prior criminal threat convictions requires a highly fact-dependent inquiry. See *Holloman*, 2023 WL 3143656, at *3. Broadly, the *Degand*, *Holloman*, and *Martinez-Guerrero* courts examined the plea hearing transcripts to determine whether the factual basis of the defendant's plea revealed whether the criminal threat was made intentionally or

recklessly. The *Blow* court had access to the charging document, which explicitly charged the defendant with intentional criminal threat. 2024 WL 1338960, at *2-3. The parties in *Blow* argued the interplay between *Boettger* and *Counterman*, just as the parties here argued to the district court and continue to argue on appeal. But once the *Blow* court determined factually that the defendant's prior conviction was for intentional criminal threat, the finding rendered irrelevant any discussion of the legal impact of *Counterman* and *Boettger* on a reckless criminal threat conviction. *Blow*, 2024 WL 1338960, at *3.

Here, the State similarly argued for intentional criminal threat to the district court. It quoted from a complaint which initially charged Dewey with aggravated assault, stating that Dewey intentionally placed the victims in reasonable apprehension of immediate bodily harm from Dewey's knife. The State noted that Dewey entered a plea agreement which allowed him to plead no contest to criminal threat instead. But the State did not quote or cite an amended complaint, drafted after or alongside the plea agreement, which charged Dewey with criminal threat, allowing him to plead no contest to that charge. It appears that the State also did not attach a journal entry, plea agreement, or other document showing this criminal threat charge, as the next page in the record is not an attachment to the State's written objection. At the hearing on the motion, the State asserted that the original charge of aggravated assault was intentional and so the intent would not have changed when the charge was amended to criminal threat. The State provided no documentation to support this assertion. It is unclear from this record whether an amended complaint was ever filed in the prior case.

After the evidentiary hearing, the district court ordered a transcript of the 2009 plea hearing, which showed the following statements:

"THE COURT: A factual basis.

"[THE STATE]: Your Honor, on August 30, 2008, . . . in Parsons, Kansas, within Labette County, Kansas, the defendant verbally and physically threatened violence to the victim by chasing him around and yelling verbal threats while brandishing a knife."

The district court determined that sufficient evidence supported scoring the prior criminal threat conviction because "it was intentional and/or reckless—and reckless. It could be both." The district court found from the transcript of that plea hearing that the factual basis established both intentional and reckless criminal threat, adding that the United States Supreme Court's decision in *Counterman* made it irrelevant whether the conviction was based on intentional or reckless conduct.

Notably, the factual basis did not explicitly state whether the criminal threat was reckless or intentional; it used neither of those words.

This is not the first time the issue has confronted this court. In *Degand*, Cody Michael Degand pleaded guilty to burglary of a vehicle, battery, and two counts of theft. His PSI report included a conviction for criminal threat, which Degand objected to. The district court did not include the criminal threat conviction in his criminal history score. The plea transcript outlining Degand's threats to police officers is strikingly similar to the plea transcript here. Degand made gestures and told the officers he would shoot them and called them explicit names. 63 Kan. App. 2d at 461. Just as Dewey wielded a knife here, Degand similarly picked up gardening shears and a gardening picket and approached the officers. He asked the officers to shoot him. The *Degand* court held that this factual basis in the plea transcript was "not enough to establish whether Degand made those comments in the heat of the moment or that he actually intended to threaten the officers." 63 Kan. App. 2d at 463.

9

Here, Dewey "'verbally and physically threat[en]ed violence to the victim by chasing him around and yelling verbal threats while brandishing a knife.'" This factual basis provides even less detail than the factual basis at issue in *Degand*, and certainly not enough to conclude that the threat was made intentionally rather than merely recklessly. Our Supreme Court has declined to find even explicit death threats to be made necessarily with intent rather than made recklessly. See *State v. Lindemuth*, 312 Kan. 12, 18-19, 470 P.3d 1279 (2020); *State v. Johnson*, 310 Kan. 835, 843-44, 450 P.3d 790 (2019).

Further, other panels of this court have rejected offers to assume that a defendant made his prior criminal threat intentionally rather than recklessly. See *State v. Lawson*, No. 126,008, 2024 WL 2104651, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 319 Kan. 835 (2024); *State v. Harrington*, No. 125,022, 2023 WL 9016151, at *14 (Kan. App. 2023) (unpublished opinion); *State v. Jackson*, No. 124,271, 2022 WL 1906940, at *5-6 (Kan. App. 2022) (unpublished opinion). Dewey correctly argues that this case is like *Jackson* because the district court here found that the factual basis supported both intentional and reckless criminal threat. William Cody Jackson Sr. pleaded no contest to both versions of criminal threat. But the record was insufficient to establish the intentional version of criminal threat, so the *Jackson* court held it could not be included in his criminal history score. 2022 WL 1906940, at *5.

This lack of record support places *Jackson*, and this case, in stark contrast to *State v. Oliver*, No. 123,767, 2022 WL 333733 (Kan. App. 2022) (unpublished opinion). When the subject of criminal history came up, the State conceded that it had charged Jevante Oliver with both intentional criminal threat and reckless criminal threat in an earlier case. 2022 WL 333733, at *2. But the State relied on a plea colloquy in which the district court directly asked Oliver, "'And when you threatened to commit violence against him or to hit him, as you stated, did you do it with the intent to put him in fear?'" 2022 WL 333733, at *2. Oliver said yes. The *Oliver* court held that the district court properly applied the

10

modified categorical approach by taking the plea colloquy as evidence that Oliver unequivocally stated that he intentionally threatened the victim to frighten him. "Moreover, no reasonable reading of the record could result in the conclusion that Oliver's conduct was reckless rather than intentional." 2022 WL 333733, at *5. Here, a reasonable reading of the record could lead to concluding that Dewey made his criminal threat recklessly.

Factually, the State failed to sufficiently establish that Dewey's prior conviction was for intentional criminal threat. Instead, the State pursues a line of argument on the applicability of our Supreme Court's decision in *Boettger*. The State argues that the United States Supreme Court's decision in *Counterman* overruled *Boettger* by holding that convictions for reckless criminal threat are constitutional. The State also cites this court's decision in *State v. Phipps*, 63 Kan. App. 2d 698, 539 P.3d 227 (2023). The State asserts that, even though our Supreme Court granted review of *Phipps*, the controlling law at Dewey's sentencing was the *Phipps* court's holding that reckless criminal threat convictions can be included in a criminal history score. The State relies on this line of cases to establish its argument that a criminal history score can include reckless criminal threat convictions legally.

But the State's legal argument fails. The relationship between *Boettger* and *Counterman* is irrelevant. The plain language of K.S.A. 21-6810(d)(9) states that if a conviction has been declared unconstitutional, then it may not count towards a criminal history score regardless of a later change in the law:

> "If a prior conviction arose under a statute 'that has since been determined unconstitutional by an appellate court,' it cannot be counted in a criminal history score. Nothing in the plain language of the statute qualifies this limitation by considering *subsequent repudiations* of an appellate court's holding that a statute is unconstitutional." *Smith*, 320 Kan. at 91.

11

The district court erred by including Dewey's prior conviction for criminal threat and Dewey's sentence must be vacated and the case remanded for resentencing.

II. *Did the district court deprive Dewey of due process?*

Dewey argues that the district court's approach to his criminal history score violated his right to due process under the Kansas and United States Constitutions. He argues that the procedure set forth in K.S.A. 21-6814 protects his due process rights and a failure to follow the procedure denied him process. Because Dewey's argument on appeal is substantially different from the argument he presented to the district court, this issue is unpreserved.

On appeal, the argument Dewey presents is that K.S.A. 21-6814 provides explicit steps for determining an offender's criminal history score, that the district court did not follow these steps, and that such failure violated Dewey's due process. He begins by noting that K.S.A. 21-6814(a) allows an offender to admit his criminal history score in open court. He argues that he admitted to a criminal history score of D, and the district court should have accepted this admission. On appeal, he claims that the district court violated his due process by not accepting this admission and, while he claims that this argument is preserved, none of his record citations show that he made this argument to the district court.

Instead, he presented the district court with different arguments; some related to due process concerns while others presented statutory, not constitutional, violations. He argued to the district court that due process required the district court to follow *Boettger* and sentence him with a criminal history score of D. And he argued to the district court that the State could not object to a criminal history score under K.S.A. 21-6814. Dewey argued that, instead, the district court should proceed with his admission to his criminal history score of D, rather than allow the State to object. Dewey continued to press this

objection at sentencing. He argued the statutory interpretation claim that the State could not object under K.S.A. 21-6814.

Thus, the argument that Dewey presented to the district court was that the district court was failing to follow the clear instructions of K.S.A. 21-6814. Interpretation of a sentencing statute is a question of law, and the standard of review is unlimited. *State v. Moore*, 309 Kan. 825, 828, 441 P.3d 22 (2019).

The rule of lenity requires courts to construe an ambiguous statute "in the accused's favor, with the qualification that the judicial interpretation in favor of the accused must be reasonable and sensible to effect the legislative design and the intent of the act." *State v. Gales*, 312 Kan. 475, 485, 476 P.3d 412 (2020). The same rule applies when a criminal statute is silent on a matter. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). Thus, this court's interpretation of K.S.A. 21-6814 would favor Dewey if the statute is silent or ambiguous on how a district court is to proceed with objections or admissions to a criminal history score.

But Dewey does not ask this court on appeal to interpret K.S.A. 21-6814. Instead, he asserts that the district court's approach violated his due process rights. This is not the same argument. Dewey presents the issue as a constitutional due process claim for the first time on appeal. The issue is unpreserved. An appellate court's decision to review an unpreserved claim under an exception is prudential; even if an exception applies, the appellate court is not obligated to review the claim. *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021). Also, consideration of the claim is not necessary to prevent the denial of fundamental rights. See, e.g., *State v. Dunn*, 304 Kan. 773, 819, 375 P.3d 332 (2016) (Issues may be raised for the first time on appeal if consideration of the claim is necessary to serve the ends of justice or prevent the denial of fundamental rights.). The State failed to meet its burden by a preponderance of the evidence to show that Dewey's prior conviction was for intentional criminal threat. This failure resolves the issue and

consideration of Dewey's due process rights is surplus to requirements. Dewey's K.S.A. 21-6814 arguments—that the district court should have accepted his admission and that the State could not object—may not be reframed as constitutional arguments on appeal.

Dewey presents one additional argument, asserting that the district court failed to act as a neutral arbiter in determining whether the prior conviction was for intentional or reckless criminal threat. He notes that the State did not provide a transcript of the earlier plea hearing which provided the factual basis for the criminal threat conviction. The district court ordered that transcript. Dewey argues that the district court stepped outside of its neutral role and carried the State's burden of production. Dewey objected to consideration of this transcript because the State failed to supply it. This argument is preserved, not a new one presented for the first time on appeal. But resolution of this issue is also not necessary because the State failed to provide sufficient evidence, even with this transcript, to verify that Dewey's prior conviction was for intentional criminal threat.

## III. *Did the district court err by ordering Dewey to register as an offender?*

Dewey argues that he is not required to register as an offender. The State slightly but crucially misunderstands Dewey's argument and responds that Dewey received notice that he would need to register, affording him due process. Because Dewey is not required to register, the district court's order to register is void.

A void judgment may be vacated at any time. *State v. Trotter*, 296 Kan. 898, 905, 295 P.3d 1039 (2013).

Dewey's argument—properly understood—begins with the text of KORA, specifically K.S.A. 22-4902. First, K.S.A. 22-4902(a) lists the types of offenders required to register: sex offenders, violent offenders, drug offenders, anyone required under out-

of-state or other law to register, and any person required by court order to register for an offense not otherwise required as provided in KORA. Then, K.S.A. 22-4902(c) lists the sexually violent crimes which create sex offender status upon conviction, K.S.A. 22-4902(e)(1) lists the crimes which compel registration as a violent offender, and K.S.A. 22-4902(f) lists the crimes which create drug offender status. But crimes which do not carry an obligation to register may nevertheless result in a duty to register, with judicial factfinding.

Under K.S.A. 22-4902(e)(2), an offender convicted of any person felony must register as a violent offender if the district court makes a finding on the record that a deadly weapon was used in the commission of the person felony. But if the district court fails to make such finding, then the duty to register is never triggered. *State v. Thomas*, 307 Kan. 733, 748-50, 415 P.3d 430 (2018).

In *Thomas*, the question before our Supreme Court was whether appellate courts could remand for the district court to make the finding that the defendant used a deadly weapon. The *Thomas* court held that this was not possible because the failure to make the finding meant that the defendant, by definition, was not a violent offender required to register. No remand was necessary or even possible because, by failing to make the proper finding, the district court ensured that the defendant was not a violent offender. 307 Kan. at 750.

Later, our Supreme Court revisited the same issue from a different point in the timeline in *State v. Juarez*, 312 Kan. 22, 470 P.3d 1271 (2020). In *Thomas*, the district court never made the factfinding and the issue was whether such factfinding was possible after an appeal (and subsequent remand). In *Juarez*, the factfinding was at sentencing, in other words before appeal but after the conviction. The majority in *Juarez* "express[ed] no opinion on the underlying validity of the district court's registration order" when holding that no due process rights were violated. 312 Kan. at 26. But in a concurrence,

15

Justice Stegall did not premise his view on the assumption that the registration order was valid. He concurred that the defendant's due process rights were not violated, precisely because the district court's registration order was not valid and the defendant had no duty to register. 312 Kan. at 28, 30 (Stegall, J., concurring).

> "[W]hen the necessary fact-finding is not made by a district court at the time of conviction—and the notice that goes along with it is not given—the defendant does not actually have a due process complaint. No process has been denied because the defendant is not an offender required to register under KORA." 312 Kan. at 30 (Stegall, J., concurring).

Our Supreme Court again considered the due process implications of KORA registration in *State v. Unruh*, 320 Kan. 260, 565 P.3d 825 (2025). Ultimately, the *Unruh* court instead held that this court abused its discretion by considering the defendant's due process claim presented for the first time on appeal. 320 Kan. at 264-65. Again, Justice Stegall concurred, stating that the defendant did not qualify as an offender and did not need to register because the district court failed to make the appropriate findings at the time of conviction. 320 Kan. at 267-68 (Stegall, J., concurring). And *Unruh* is the most recent instance of our Supreme Court opinions considering this issue, meaning that so far no precedent establishes whether Justice Stegall's reading of KORA is correct.

But Dewey here specifically adopts that reasoning. Dewey takes Justice Stegall at his word when he says "the defendant does not actually have a due process complaint," so Dewey makes a different claim. See *Juarez*, 312 Kan. at 30 (Stegall, J., concurring). The State fails to confront Dewey's argument. Dewey makes no argument about a lack of notice depriving him of due process. Instead, he argues that a lack of findings at the time of conviction relieves him of his offender status or, more precisely, fails to trigger an offender status: "Dewey is categorically not an offender subject to registration." The State responds to an argument Dewey does not make, instead addressing the due process

16

argument presented in *Unruh* and other recent cases. Dewey does not argue a due process violation but instead focuses on a statutory obligation.

KORA creates an obligation to register if one of three conditions exists:

"(1) the mere fact of a conviction classifies the defendant as an 'offender'; (2) the fact of a conviction plus some statutorily permitted judicial fact-finding classifies the defendant as an 'offender'; or (3) a judicial order determines, through the exercise of judicial discretion, that the defendant should be considered an 'offender.'" *Thomas*, 307 Kan. at 748.

To illustrate, the first category applies to offenders convicted of a crime specifically listed by name—what might be called the listed offense category. K.S.A. 22-4902(b)(7) requires anyone convicted of breach of privacy as defined in K.S.A. 21-6101(a)(6)-(8) to register as a sex offender. See, e.g., *State v. Brown*, No. 124,996, 2023 WL 2619341 (Kan. App. 2023) (unpublished opinion). Joker Brown was convicted of breach of privacy, which was listed in the sex offenses category of K.S.A. 22-4902(b), so Brown needed to register as a sex offender. 2023 WL 2619341, at *2. There is no argument that Dewey falls into this category; his crime of conviction is not listed in K.S.A. 22-4902 and the district court specified as much in the journal entry.

The second category requires more than a conviction of a listed crime. Again, an example helps. Under K.S.A. 22-4902(e)(2), an offender is required to register if convicted of any person felony *and* the court makes a finding on the record that a deadly weapon was used in the commission of the person felony. Sheena Thomas was convicted of aggravated battery with a deadly weapon. *Thomas*, 307 Kan. at 733. But the district court did not make a finding on the record that Thomas used a deadly weapon and the absence of this statutorily defined condition precedent meant that Thomas had no duty to register. 307 Kan. at 750. In this category, perhaps best referred to as the judicial factfinding category, a district court's failure to find the crucial fact means that the

17

offender has no duty to register. See, e.g., *State v. Buzzini*, 63 Kan. App. 2d 335, 342-43, 528 P.3d 1024 (2023) (no duty to register for involuntary manslaughter while driving under the influence because the district court made no finding that the car was a deadly weapon). The parties also do not argue that Dewey falls into this category.

Instead, Dewey is by all accounts in the third category—which might be called the judicial determination category. In these instances, the district court may determine that although the crime of conviction would ordinarily—even with additional factfinding—not require offender registration, the offender should nevertheless be required to register. See K.S.A. 22-4902(a)(5). In both the second and third categories, judicial factfinding may be necessary and "that fact-finding is itself one of the statutorily defined conditions precedent. Without such a fact-finding, the defendant cannot be an offender under KORA, and the obligation to register never springs into existence." *Thomas*, 307 Kan. at 749. But *Thomas*, which is binding precedent, only states that the district court must make the findings, not whether it shall make the findings upon conviction or at sentencing. Justice Stegall's concurrence in *Juarez*, which is of course not binding, insists that the district court must make the findings "'[a]t the time of conviction or adjudication for an offense requiring registration'" to comply with the legislative intent of KORA, as expressed at K.S.A. 22-4904(a)(1)(A). 312 Kan. at 30 (Stegall, J., concurring). The State fails to respond to this argument, instead committing the sin of *hamartia*—missing the mark. The State assumes that Dewey complains of a due process violation and argues that he received sufficient notice of a registration requirement to afford him due process.

But none of the notice that the State cites in the record constitutes the factfinding or determination by the district court that Dewey must register. The State points to a statement made by Dewey's counsel at his plea hearing:

> "Essentially, Your Honor, that my client would be entering a plea of no contest to the charge of child abuse with the agreement that he would serve the aggravated term,

18

and no contact with the victim, and that he would be allowed to have his post release somewhere outside of the State of Kansas.

".... And the understanding that he would be required likely to register as a violent offender by agreement of the parties."

The State's record citation here shows the misunderstanding of Dewey's argument. The State correctly argues that Dewey had notice and an opportunity to be heard on the KORA requirement, such that due process would be fulfilled if Dewey was required to register. But that is not Dewey's argument. His argument is that he is not required to register because the district court did not enter a judicial order determining, through the exercise of judicial discretion, that Dewey should be considered an "offender" under K.S.A. 22-4902(a)(5). The State does not point to an order from the bench determining that Dewey should be considered an offender. Instead, it points to a statement from Dewey's counsel showing an understanding that the plea agreement, which the district court is not bound to follow, is "likely" to result in a registration requirement.

Worse yet, there is a mismatch between this statement by Dewey's counsel at the plea hearing, the district court's statement at the later motions hearing, and the journal entry entered after sentencing. While defense counsel acknowledged the possibility of registration as a "violent offender," the district court did not make a determination at the plea hearing that Dewey should register as an offender of any kind. Later, at the hearing on the objection to the PSI report, the district court misstated the requirement by saying, "The agreement is that he register for 15 years as a sexual offender. So that is part of the plea agreement and that is a requirement that he complete that paperwork."

The confusion between offender types continued at the sentencing hearing. The district court asked for the State's recommendation:

"[THE STATE]: . . . The State would request that the Court follow the plea agreement. The agreement was that the sentencing would—the sentence would be the

19

aggravated number, and that the defendant would be sent to [the Kansas Department of Corrections] to do his time. And that there would be 15 years to register as a violent offender.

"THE COURT: All right. And [defense counsel], does the defense have any evidence or comments to present to the Court in mitigation of sentence?

"[DEFENSE COUNSEL]: I am just not sure that this requires registration.

"THE COURT: I make a finding in regard to that and that is my understanding for this conviction is it requires a 15-year registration."

Two problems arise from this exchange. First, the district court's finding is unclear from its phrasing. The statement "that is my understanding for this conviction is it requires a 15-year registration" can be read to imply that Dewey's crime of conviction is listed in K.S.A. 22-4902 as one of the crimes which requires registration. This statement would be legally incorrect as Dewey's crime of conviction, abuse of a child in violation of K.S.A. 2017 Supp. 21-5602(a)(2), does not appear in K.S.A. 22-4902 as a crime requiring registration. But the district court's statement could also be read as determining, through the exercise of judicial discretion, that Dewey should be considered an offender. See *Thomas*, 307 Kan. at 748. At best, the finding is ambiguous.

The second problem is that it continues a confusion between a sex offender under K.S.A. 22-4902(a)(1), a violent offender under K.S.A. 22-4902(a)(2), and an offender under K.S.A. 22-4902(a)(5). At the plea hearing, defense counsel acknowledged the possibility of registration as a "violent offender." K.S.A. 22-4902(a)(2). The district court, at the later motions hearing, characterized the plea agreement as requiring Dewey to register as "a sexual offender." K.S.A. 22-4902(a)(1). At sentencing, the State told the district court that Dewey would need to register for 15 years "as a violent offender," and the district court seemingly agreed. K.S.A. 22-4902(a)(2). And the journal entry required Dewey to register as an "offender" because of "[a]n offense not otherwise required, as provided by the Kansas Offender Registration Act, K.S.A. 22-4902(a)(5)."

20

Dewey is not similarly situated to Joker Brown. The district court in *Brown* found that Brown's crimes were sexually motivated and classified his convictions as sexually violent crimes under K.S.A. 2019 Supp. 22-4902(c)(18), which requires factfinding by the district court to trigger an obligation to register. Without needing to reach Brown's claim that the district court violated his jury trial rights by making this finding, the *Brown* court vacated the finding and the resulting obligation to register under K.S.A. 2019 Supp. 22-4902(c)(18). 2023 WL 2619341, at *2. But this did not end Brown's obligation to register. The *Brown* court determined that Brown was in the category of offenders where the conviction itself triggers the duty to register. That is, Brown was required to register once he was convicted of breach of privacy, regardless of factfindings made by the district court, because breach of privacy is listed as a crime requiring registration under K.S.A. 2022 Supp. 22-4902(b)(7). 2023 WL 2619341, at *2. Thus, the district court's erroneous finding of sexual motivation did not relieve him of his obligation to register. The fact of his conviction of a listed crime triggered his registration requirement.

Dewey is not in that category of offenders. Dewey's offense was not listed in K.S.A. 22-4902 and his obligation to register could only be triggered by a judicial determination that he should register even though his offense was not a KORA-listed offense. From the sentencing transcript, it is unclear whether the district court ever made this finding at all. Certainly, the district court did not make the finding "[a]t the time of conviction or adjudication" as K.S.A. 22-4904(a)(1)(A) implies is a requirement to trigger the obligation to register. See *Juarez*, 312 Kan. at 30 (Stegall, J., concurring). Dewey is correct that he is not an offender required to register because his obligation to register was never triggered. The order requiring him to register is invalid.

Reversed in part, sentence vacated, and case remanded with directions.

21